UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CURTIS O. JACKSON,

    Plaintiff,

v.                                                   Case No. 2:11-cv-261
                                                 HON. GORDON J. QUIST

DENNIS STRAUB, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Curtis O. Jackson, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Deputy Director Dennis Straub, Acting Warden/Deputy Warden James Alexander, Grievance Coordinator Glenn Caron, Acting Warden/Deputy Warden Jeff Larson and Nurse Mandi Salmi.

        Plaintiff's complaint alleges that while he was confined at the Marquette Branch Prison (MBP), Casey Anthony wrote to him and sought his advice on how to dispose of her daughter's body. Plaintiff states that because he was a potential prosecution witness, his involvement in the case was disclosed to the media and became known in the prison system. Plaintiff claims that as a result of his involvement in the case, he began receiving death threats from other inmates. Plaintiff states that he requested protection from Defendants Straub and Alexander, but neither Defendant provided him with the requested protection. Plaintiff states that while he was in segregation, prisoners spit at him and threw feces and urine at him. Plaintiff requested protection

a total of five times between November 29, 2010, and December 7, 2010. After Plaintiff's third request for protection, made on December 2, 2010, two prisoners belonging to the Vice Lords gang, named Cutty and Will, punched Plaintiff in the face and attempted to stab him in the stomach with a homemade knife in the general population yard. That same day, Plaintiff reported the incident to Defendants Alexander and Straub, as well as some unknown prison guards. Plaintiff still received no help. On December 8, 2010, Plaintiff was reclassified to administrative segregation because of a misconduct ticket.

During Plaintiff's first two weeks in administrative segregation, three unknown prisoners threw feces and a bag full of urine on Plaintiff in the segregation yard. Plaintiff states that he received continuous death threats from other prisoners, and that many of them spat at him through his cell bars and while in the shower. Defendant Alexander attempted to release Plaintiff back to general population on December 27, 2010, despite his continued requests for protection. A few weeks later, Defendant Alexander called Plaintiff a coward and stated that he would never receive any protection from him. Defendant Straub corresponded with Plaintiff in March and informed him that he needed to talk to a counselor about protection.

Defendant Caron deliberately failed to process Plaintiff's grievances against Defendants Alexander and Straub for failing to provide him with protection. Plaintiff submitted a total of eight grievances against Defendants Alexander and Straub from December 7, 2010, until February 2, 2011. Defendant Caron finally processed Plaintiff's grievance on February 2, 2011, after Plaintiff filed a grievance on Defendant Caron with another Grievance Coordinator. On February 14, 2011, Defendant Caron retaliated against Plaintiff by placing him on grievance restriction. Defendant Caron used racial slurs against Plaintiff and told him that snitches do not receive protection at MBP.

On March 9, 2011, Plaintiff was transferred to the Baraga Maximum Correctional Facility (AMF). During the transport to AMF, Plaintiff was assaulted by a prisoner who was seated next to him. The prisoner head butted Plaintiff in the face and attempted to choke Plaintiff with his steel restraints, stating that he knew Plaintiff was a snitch in the Casey Anthony case. Plaintiff made a written complaint regarding the assault with Defendant Larson, who failed to take any corrective action. At AMF, Plaintiff continued to receive death threats from other prisoners. In addition, Plaintiff was spit on and had objects thrown at him while in the segregation yard. Plaintiff made requests for protection on March 15, 2011, March 18, 2011, and March 28, 2011. On March 28, 2011, Plaintiff filed a grievance on Defendant Larson for failing to provide him with protection.

On April 5, 2011, Plaintiff's involvement in the Casey Anthony case was televised on CNN news and WLUC TV 6 local news. Every prisoner in Plaintiff's unit witnessed the telecast and called Plaintiff a rat, threatening to kill Plaintiff. On April 10, 2011, a prisoner across the hall from Plaintiff named Cliff smeared feces on a piece of paper and slid it under Plaintiff's cell door. Plaintiff asked Defendant Larson if he could be relocated, but Defendant Larson refused, stating that Plaintiff would be harassed by other prisoners no matter where he was housed. Plaintiff filed another grievance in May of 2011, but it was denied by the Grievance Coordinator.

From January 12, 2011, to March 9, 2011, Defendant Salmi deliberately exposed facts about Plaintiff's involvement with the Casey Anthony case in order to subject Plaintiff to harm by other prisoners. Defendant Salmi believed that Casey Anthony was innocent and called Plaintiff a "rat" and a "liar" and advised other prisoners that Plaintiff needed to be assaulted as punishment for being a snitch. Plaintiff filed a grievance, to no avail. Defendant Salmi also allowed inmates to view various newspaper and magazine articles which contained information about Plaintiff's involvement

with the Anthony case. As a result, Plaintiff was assaulted by a prisoner named Daniel on February 25, 2011, who grabbed Plaintiff's arms through cell bars and tried to break them.

Plaintiff claims that Defendants' actions violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as injunctive relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably

find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts that Defendants failed to protect him from assaults by other prisoners and that they actually placed him in danger by letting it be known that he was a snitch. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim,

he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Defendant Straub contends that he is entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a

time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

In his affidavit, Defendant Straub attests that on the dates that Plaintiff allegedly contacted him, he was located in Lansing, Michigan, and did not work at the Marquette Branch Prison. Defendant Straub asserts that he had no knowledge of any threats on Plaintiff, or of any request for protection made by Plaintiff. Defendant Straub further states that he only became aware of Plaintiff's allegations against him when he was served a copy of the complaint. (Defendants' Exhibit 1, docket #13-2.) In response to this assertion, Plaintiff offers copies of two letters he wrote to Defendant Straub, dated January 29, 2010, and January 24, 2011, as well as a "Reply to Prisoner Correspondence" form dated March 23, 2011, which indicates that Plaintiff had sent a transfer request to Defendant Straub. Plaintiff also attaches a copy of a grievance he filed against Defendant Straub on February 7, 2011, for failing to provide him with protective custody. (Plaintiff's Exhibit 3, docket #17-3.)

A review of the record in this case shows that there is an issue of fact regarding whether Plaintiff corresponded with Defendant Straub regarding his desire for protective custody. However, there is no indication that Defendant Straub did anything more than fail to act on Plaintiff's complaints. As noted above, merely bringing a problem to the attention of a supervisory official is not sufficient to impose liability. *Shelly v. Johnson*, 684 F. Supp. at 946. Therefore, the undersigned concludes that Defendant Straub is entitled to summary judgment.

Defendant Caron asserts that he is entitled to summary judgment because his only actions with regard to Plaintiff involved the denial of administrative grievances. Specifically, Defendant Caron attests that he was unaware of Plaintiff's involvement with the Casey Anthony case. Defendant Caron states that Plaintiff filed 83 grievances between November of 2009 and March of 2011 and that seven of these grievances were concerned with Plaintiff's safety. One of the seven grievances addressing Plaintiff's safety was rejected as non-grievable because the issue being raised was rejected in earlier filed grievances. Another grievance addressing safety concerns was rejected as duplicative. The remaining five grievances concerning Plaintiff's requests for protection were processed by Defendant Caron. The grievances were MBP 11-01-00014-17A, MBP 11-01-00013-03B, MBP 11-01-00109-12E4, MBP 11-01-00282-03B, and MBP 11-02-00315-03B, and were all filed during January and February of 2011. On February 14, 2011, Defendant Caron informed Plaintiff that he was being placed on modified access to the grievance procedure. Plaintiff responded "I knew this was coming!" Defendant Caron states that Plaintiff was placed on modified access for 90 days because of his abuse of the grievance process. Defendant Caron denies making any statements about Plaintiff being a snitch. Defendant Caron also attests that while Plaintiff was on modified access, he did not request any grievance forms while at MBP. Plaintiff was transferred to AMF on March 9, 2011. (Defendants' Exhibit 4, docket #13-5.)

Plaintiff contends that Defendant Caron was aware of his involvement with the Casey Anthony case and the fact that he was receiving threats from fellow prisoners. Plaintiff asserts that Defendant Caron's failure to process his grievances was a direct cause of him being assaulted. Plaintiff notes that after Defendant Caron placed him on modified access to the grievance procedure, he was assaulted by prisoners on February 25, 2011, and March 9, 2011. In addition, Plaintiff claims that from March 18, 2011, to March 28, 2011, he was assaulted by prisoners with spit and feces and was choked with steel restraints and hit with foreign objects. However, as noted above, five grievances concerning Plaintiff's requests for protection were processed in January and February of 2011. In addition, Plaintiff was transferred to AMF on March 9, 2011, so the assaults that occurred between March 18, 2011, and March 28, 2011, did not occur while Plaintiff was housed at MBP. Moreover, Defendant Caron cannot be liable under § 1983 for the denial of administrative grievances or the failure to act. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Because Plaintiff has failed to support his claim that Defendant Caron was personally involved in the denial of protective custody, he is entitled to summary judgment.

Defendant Alexander attests that Plaintiff was classified to administrative segregation at MBP on December 8, 2010, for a charge of sexual misconduct after he attempted to send nine sexually explicit letters to the homes of Alger Maximum Correctional Facility (LMF) female staff members. While in administrative segregation, Plaintiff requested protective custody and his concerns were forwarded to housing staff for consideration prior to his release from administrative segregation. Defendant Alexander also attests that administrative segregation is the highest level of custody at MBP. Defendant Alexander is aware that Plaintiff filed grievance number MBP 11-02-003150-03B, asserting that he had requested protective custody. The response by staff indicates that Plaintiff's protection concerns would be addressed when Plaintiff was being considered for

placement in the general population. Defendant Alexander has no recollection of calling Plaintiff a "coward" or denying him protection in January of 2011. However, a review of the records shows that he conducted Warden Security Classification interviews on January 12, 2011, and it is possible that he conducted such an interview with Plaintiff. Plaintiff's file is currently at AMF, so Defendant Alexander is unable to discover whether such an interview occurred. (Defendants' Exhibit 3, docket #13-4.)

In response to the motion for summary judgment, Plaintiff asserts that he provided Defendant Alexander with information regarding the "death contract" against Plaintiff, a list of known Vice Lords gang members that were planning to attack Plaintiff, and that he requested protective custody on this basis. Plaintiff claims that after his initial request to Defendant Alexander, he was assaulted by other prisoners. In addition, Plaintiff states that Defendant Alexander attempted to have Plaintiff transferred to the general population, despite knowing that Plaintiff was in danger of being assaulted, and that he called Plaintiff a "coward" when Plaintiff refused to leave administrative segregation. Plaintiff also offers copies of the grievance record for grievance number MBP 11-02-003-15-03B, dated February 3, 2011, which asserts that between January 15, 2011, and February 2, 2011, Plaintiff made "numerous requests to Defendant Alexander to be placed in protective custody, to no avail." The step I response indicates that Plaintiff was being held in administrative segregation and that his protection concerns would be addressed when and if he was being considered for general population. Plaintiff does not attach copies of the step II or III responses. Plaintiff also offers a copy of a letter dated November 29, 2010, that he wrote to Defendant Alexander informing him that there was a $1000 death contract out on Plaintiff and that prisoners Smith, Curty, Turner, Edwards, Johnson and Miller were planning to attack him. Finally, Plaintiff offers a copy of an undated letter to Defendant Alexander, which states that he was attacked

on December 2, 2010, and that he continued to be in danger and was seeking protective custody. (Plaintiff's Exhibits Against Defendant Alexander, docket #17-4.)

The undersigned concludes that Plaintiff has succeeded in showing the existence of a genuine issue of material fact with regard to whether Defendant Alexander was deliberately indifferent to Plaintiff's need for protection. Consequently, Defendant Alexander is not entitled to summary judgment.

Defendant Larson attests that during the pertinent time period, he was employed as Deputy Warden at AMF. Although Plaintiff claims to have been assaulted on March 9, 2011, during his transfer to AMF, neither of the transporting officers saw the alleged assault and Plaintiff did not report the incident to the officers. Defendant Larson attests that a review of the records at AMF do not show that Plaintiff attempted to notify him that his life was in danger or that he requested protective custody because of threats of harm in the general population. (Defendants' Exhibit 5, docket #13-6.) Finally, Defendant Larson offers a copy of correspondence from the Ninth Judicial Circuit Court of Florida requesting that Plaintiff not be permitted to send any further correspondence to the Clerk of the Court regarding the Casey Anthony case. (Defendants' Exhibit 5, docket #13-6.)

In response, Plaintiff offers a copy of a request for a step I grievance addressed to the Grievance Coordinator at AMF, which is stamped "Received Apr 04 2011." In this request, Plaintiff states that a $1000 death contract has been issued on him and that he had been assaulted multiple times by prisoners at MBP, as well as during his transport to AMF. Plaintiff also states in his request for a grievance form that he had advised Defendant Larson of his situation on numerous occasions and had requested protection. Plaintiff's request states:

> Despite the fact that I am in segregation, I should be afforded a reclassification to protective custody because I am entitled to privileges just as a general population prisoner. I have demonstrated

> positive behavior in segregation that would entitle me to a reclassification to protective custody. Warden Larson will not respond to my complaints and has a disregard for my safety. It is unfair that I sit in Administrative segregation when I should be afforded a protective custody institution.

(Plaintiff's Exhibits against Defendant Larson, docket #17-5.)

In requesting a grievance form, Plaintiff also states that he wished to have Channel 44 (Tru TV) removed from the prison satellite because it was covering the Casey Anthony trial and the coverage included details of Plaintiff's involvement in the case. There is a response on the bottom of the request which indicates that cable television in the prison is set pursuant to a statewide contract, so that there is no local control over programming. (Plaintiff's Exhibits against Defendant Larson, docket #17-5.)

Plaintiff also offers a copy of a July 1, 2011, "Reply to Prisoner Correspondence" form, which shows that a letter from Plaintiff to the MDOC Director had been forwarded to Defendant Larson. In addition, Plaintiff offers a March 23, 2011, memo from the Grievance Coordinator to Defendant Larson requesting an extension of Plaintiff's modified access status from May 13, 2011, to July 13, 2011. This request was approved by Defendant Larson. (Plaintiff's Exhibits against Defendant Larson, docket #17-5.)

A review of the exhibits related to Defendant Larson fails to show that he was deliberately indifferent to a substantial risk that Plaintiff would sustain some serious injury. As noted above, in Plaintiff's request for a grievance form, he states that his continued placement in administrative segregation, as opposed to protective custody, is unfair because he is not receiving all of the privileges to which he is entitled. Although Plaintiff claims that he was assaulted while in administrative segregation at AMF, there is no indication that Plaintiff notified Defendant Larson of these assaults or indicated that his placement in protective custody was necessary in order to avoid

injury. Therefore, the undersigned recommends that Defendant Larson be granted summary judgment.

Plaintiff claims that Defendant Salmi created unsafe conditions for him when she discussed Plaintiff's involvement with the Casey Anthony case with other prisoners and allowed them to view newspaper and magazine articles regarding this involvement. In addition, Defendant Salmi advised other prisoners that Plaintiff was a "rat" and need an "ass-whip" for being a snitch. Plaintiff offers a copy of grievance number MBP 11-01-00109-12E4, in which he claims that Defendant Salmi engaged in the above misconduct. The response to Plaintiff's grievance indicates that Defendant Salmi denied Plaintiff's claims and that Plaintiff might be retaliating against Defendant Salmi for a prior sexual misconduct ticket she had written on him. (Plaintiff's Exhibits against Defendant Salmi, docket #17-5.) In response to Plaintiff's claims, Defendant Salmi offers her affidavit, in which she denies Plaintiff's allegations of wrongdoing. (Defendants' Exhibit 6, docket #13-7.)

The undersigned concludes that Plaintiff has succeeded in showing the existence of a genuine issue of material fact with regard to whether Defendant Salmi created a safety issue for Plaintiff by discussing his involvement with the Casey Anthony case with other prisoners. Consequently, Defendant Salmi is not entitled to summary judgment.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used

to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated with regard to Defendants Straub, Caron and Larson, these defendants are entitled to qualified immunity.

However, as noted above, a genuine issue of material fact exists regarding whether Defendants Alexander and Salmi violated Plaintiff's rights under the Eighth Amendment. It is well established that prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). Therefore, the undersigned concludes that Defendants Alexander and Salmi are not entitled to qualified immunity.

With regard to Plaintiff's pending motion for a temporary restraining order (docket #3), Plaintiff seeks an order requiring Defendants to place him in protective custody. However, should the court adopt the report and recommendation in this case, the only remaining Defendants are Alexander and Salmi, both of whom are employed at MBP. As noted above, Plaintiff is currently

confined at AMF. Because neither Defendant Alexander or Defendant Salmi have any continuing authority over Plaintiff, his claims for injunctive relief against them are properly denied as moot.

Plaintiff's September 21, 2011, motion for contempt (docket #10) seeking placement in a different unit at AMF is also properly denied, as none of the remaining Defendants are employed at AMF. Nor is Plaintiff entitled to an order of contempt against Defendants for failing to file a separate response to Plaintiff's motion for temporary restraining order because Defendants' motion for summary judgment is a sufficient response. Therefore, Plaintiff's October 24, 2011, motion for contempt (docket #18) is properly denied. Finally, Plaintiff's motion for order that he be allowed to testify on his own behalf in response to Defendants' motion for summary judgment (docket #19) is properly denied as unnecessary.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to the motion for summary judgment as to Defendants Straub, Caron and Larson. However, the undersigned recommends denial of Defendants' motion for summary judgment with regard to Defendants Alexander and Salmi. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (docket #12) be granted as to Defendants Straub, Caron and Larson, and denied as to Defendants Alexander and Salmi.[1] It is also recommended that Plaintiff's motions for a temporary restraining order (docket #3), for contempt (docket #10 and #18), and for order to testify (docket #19) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

---

[1] It is with reluctance that this recommendation is made. Plaintiff's involvement in the Casey Anthony case was self created. It is unlikely that the facts are as Plaintiff maintains. Unfortunately, this case may have to go to a jury. Thereafter, some court employee will likely have to explain to the jury why the federal courts are wasting resources on such a matter.

of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 17, 2012