UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CURTIS O. JACKSON,

        Plaintiff,                                      Case No.  2:11-cv-261

v.                                                      HON. GORDON J. QUIST

DENNIS STRAUB, *et al.*,

        Defendants.

_____/

## MEMORANDUM OPINION AND ORDER
## ADOPTING REPORT AND RECOMMENDATION

On February 17, 2012, the Magistrate Judge issued a Report and Recommendation ("R & R") (docket no. 29) recommending that Defendants' Motion for Summary Judgment be granted in part and denied in part.  The R & R recommended that this Court grant summary judgment in favor of Defendants Straub, Caron and Larson, but deny summary judgment as to Defendants Alexander and Salmi.  Plaintiff, Curtis Jackson, filed Objections to the R & R. (Docket no. 30.)  Defendants Alexander and Salmi also filed Objections.  (Docket no. 34.)  "The district judge must determine *de novo* any part of the Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  After conducting a *de novo* review of the R & R, all parties' Objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted, but Defendant Alexander's objection will be partially granted.

The R & R also recommended that Plaintiff's motion for a temporary restraining order (docket no. 3) should be dismissed as moot, Plaintiff's motions for contempt (docket nos. 10 & 18) should be dismissed as moot, and Plaintiff's motion for an order that he be allowed to testify on his own behalf in response to Defendants' motion for summary judgment (docket no. 19) be denied.

No party has objected to these findings. Finding no error, the Court will adopt the portions of the R & R that recommends these motions (docket nos. 3, 10, 18 & 19) be dismissed or denied.

### I. Plaintiff's Objections (docket no. 30)

Plaintiff objects, very generally, to the R & R's recommendation that summary judgment should be granted in favor of Defendants Straub, Caron, and Larson. The objections are conclusory legal allegations couched in factual terms that the Defendants are liable under the Eighth Amendment and that the Defendants did have the requisite involvement to be liable under Section 1983. Plaintiff's filing of general and vague objections is tantamount to a failure to object. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Moreover, this Court agrees with the R & R that Plaintiff does not put forth sufficient evidence to maintain a Section 1983 Eighth Amendment claim against Defendants Straub, Caron, and Larson. Therefore, the R & R's recommendation to grant summary judgment as to Defendants Straub, Caron, and Larson will be adopted and these defendants will be dismissed.

### II. Defendants Alexander's and Salmi's Objections (docket no. 34)

Defendants Alexander and Salmi raise two objections to the R & R. First, they object that Plaintiff failed to establish the objective component of an Eighth Amendment claim. Second, they argue that Plaintiff's placement in administrative segregation was a reasonable response to the risk that Plaintiff faced.

#### 1. Objective component of Eighth Amendment claim

The failure to protect a prisoner from a risk of harm must be objectively "sufficiently serious." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer v. Brennan*, 511 US. 825, 834, 114 S. Ct. 1970, 1977 (1994)). "While a prisoner does not need to demonstrate that he has been the victim of an actual attack to bring a personal safety claim, he must establish that he

reasonably feared such an attack." *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994). Additionally, in *Thompson*, although the plaintiffs <u>alleged</u> instances of physical violence, the court found that the prisoners' fear were not reasonable because the prisoners did not provide any <u>evidence</u> that the alleged instances of physical violence were in any way related to the alleged constitutional wrong. *Thompson*, 29 F.3d at 243.

Here, Defendants argue, "Plaintiff failed to show that his risk of harm was objectively sufficiently serious" because his risk of harm was "primarily hypothetical, not actual." Defendants contend that "reasonable fear" must stem from past actual violence and, here, Plaintiff has not provided sufficient evidence at the summary judgment stage to show he had a reasonable fear of future attacks stemming from past actual violence.

Plaintiff's allegations and letters suggest, taken in the light most favorable to him, that he had a reasonable fear for his safety. According to Plaintiff, many prisoners sought to attack him, including putting a bounty out for him, and, on or near December 2, 2010, Plaintiff was assaulted and almost stabbed. These events, if true, create a reasonable fear of attack. Thus, Plaintiff had a reasonable fear of being attacked which was a direct result of Defendant Alexander's failure to sufficiently protect Plaintiff.

As to Defendant Salmi, however, Plaintiff has not put forth any evidence that Defendant Salmi's alleged unconstitutional conduct–discussing Plaintiff's self-created and false involvement in a case with other prisoners–was in any way related to his allegations of being attacked or fearing for his safety. "Eighth Amendment claims may not be based on the totality of circumstances, but rather must identify a specific condition that violates the inmates' right to personal safety." *Thompson*, 29 F.3d at 242. The specific condition that Plaintiff alleges violated his right to personal safety was Defendant Salmi's inappropriate discussions with other prisoners. To withstand summary judgment, Plaintiff must provide <u>evidence</u> that he was attacked or feared for his safety

3

because of the alleged constitutional wrong. *Thompson*, 29 F.3d at 243. Plaintiff solely relies on his attestation that he was attacked by "a prisoner name[d] Daniel" on February 25, 2011, because of Defendant Salmi's actions.

Plaintiff does not withstand Defendant Salmi's motion for summary judgment because he does not come forth with sufficient evidence from which a reasonable jury could find in his favor. First, Plaintiff alleges throughout his complaint that the "Vice Lords" had a death threat put out for him, he had been assaulted and threatened to be assaulted numerous times, and all prisoners throughout the MDOC knew of (and apparently many resented) his involvement with the Casey Anthony trial. Second, Plaintiff filed a grievance against Defendant Salmi *six weeks* before the alleged attack that occurred "as a result" of Defendant Salmi's actions. Thus, besides Plaintiff's unsubstantiated attestation that he was attacked "as a result" of Defendant Salmi's discussions, which amounts to a scintilla of evidence, *see infra*, n.1, Plaintiff has not put forth any other admissible evidence to suggest that "Daniel" attacked him because of Defendant Salmi's purported discussions with other prisoners, rather than because of the inmates' general resentment towards Plaintiff or because of the Vice Lords' bounty that already existed before Defendant Salmi's actions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (stating that a mere scintilla of evidence in support of the nonmovant's position will be insufficient to withstand summary judgment). In fact, Plaintiff has not put forth any evidence, other than his own allegations through his affidavits and grievances that could lead to the conclusion he was attacked because of Defendant Salmi's actions.[1] Therefore, Defendant Salmi's objection will be granted and Plaintiff's claim against her will be dismissed.

Therefore, Defendants' objection is granted as to Defendant Salmi.

---

[1] According to the responses that Plaintiff received from his grievance regarding Defendant Salmi's alleged misconduct, the MDOC also found Plaintiff's allegations wholly unbelievable and without support.

      2.     <u>Reasonableness of Defendants' response</u>

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844, 114 S. Ct. 1970, 1982-83 (1994). "Reasonable safety" is a standard that takes into account prison officials' task of keeping dangerous men in safe custody under humane conditions. *Id.* at 844-45, 114 S. Ct. at 1983 (internal citations omitted).

Defendant Alexander put Plaintiff in administrative segregation on December 8, 2010. Even though Plaintiff was classified to administrative segregation for an unrelated misconduct ticket, administrative segregation was a reasonable response to keep Plaintiff safe. Administrative segregation is the "most restrictive level of security classification" in the Michigan Department of Prisons (MDOC). Furthermore, Plaintiff requested protective custody, but Marquette Branch Prison (MBP) does not have "protective housing." (Docket no. 17-1 at 19.) Moreover, protective housing is only for those prisoners "who do not require placement in administrative segregation," (*id.*), and here, after December 8, 2010, Plaintiff required placement in administrative segregation. Therefore, Defendant Alexander cannot be liable after December 8, 2010, the date which Plaintiff was placed in administrative segregation at MBP.

However, Plaintiff provides a letter that he allegedly sent to Defendant Alexander on November 29, 2010. An MDOC Director's Office Memorandum that Plaintiff provided (docket no. 17-1 at 19-20) states that when a general population prisoner requests protection, the prisoner shall be placed in temporary segregation. Here, even though the memorandum was sent to prison wardens after November 29, 2010, the Court considers the letter to describe what would have been a reasonable response. According to Plaintiff, he was not put into temporary segregation and, subsequently, prisoners assaulted him and attempted to stab him before he was moved to administrative segregation. Therefore, this Court does not think that Defendant Alexander

5

responded reasonably between the time of *receiving* the November 29, 2010, letter from Plaintiff and December 8, 2010. For the time in between these dates, Plaintiff's Eighth Amendment claim against Defendant Alexander will proceed.[2]

As to Defendant Salmi, discussing Plaintiff's involvement with other prisoners would only add more fuel to other prisoner's fire to be upset with Plaintiff for his alleged participation as a "snitch." Even though this Court seriously questions the validity of these allegations, if proven to be true, Defendant Salmi's actions would not be considered a reasonable response to Plaintiff's safety concerns. Thus, Defendant Salmi's objection that she responded reasonably is overruled. Therefore,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation issued February 17, 2012 (docket no. 29) is **ADOPTED in part**.

**IT IS FURTHER ORDERED** that Defendants' objections (docket no. 34) are **GRANTED IN PART** and **OVERRULED IN PART**. Defendants' objections are granted insofar as Plaintiff's claim against Defendant Alexander is limited to the time between receiving a complaint regarding the need for protective custody and December 8, 2010, and also granted insofar as Plaintiff's claim against Defendant Salmi is dismissed.

---

[2] Like the Magistrate Judge, this Court seriously questions Plaintiff's ability to prevail on his claims at trial. His complaint, allegations, and exhibits are riddled with inconsistencies and fallacies. For example, despite being transferred to a different prison on March 9, 2011, Plaintiff alleges that, as of October, 2011, Defendant Alexander continues to ignore his requests. Of course, as of any date past March 9, 2011, Defendant Alexander had nothing to do with Plaintiff's incarceration. In addition, the most glaring fallacy is Plaintiff's figment-of-the-imagination ties to the "Casey Anthony case," which he continues to allege his matter-of-fact involvement–all of which makes his allegations and sworn-to statements to be less believable. Moreover, Plaintiff alleges instances when he was assaulted or when his ankles were cut with razors, yet Plaintiff does not provide a single medical record or evaluation of such an event. Furthermore, Plaintiff references a great deal of complaints and grievances, but only attaches a select few to his complaint and response to summary judgment–leading this Court to question the number of actual grievances or letters Plaintiff filed. Of course, all of this added up leads this Court to question whether Plaintiff's allegations of assaults, grievances, Defendants' inappropriate conduct, and complaints are just as fictional as his letters that he allegedly received from Casey Anthony. Unfortunately, a jury may have to answer that question.
 At the same time, this Court cannot completely rule out the existence, or lack thereof, of documents supporting or refuting Plaintiff's claim. If such documents did not exist, this Court expects that Defendants would have provided that information in their motion for summary judgment to prevent this matter from going to trial.

**IT IS FURTHER ORDERED** that Plaintiff's objections (docket no. 30) are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (docket no. 12) is **GRANTED IN PART** and **DENIED IN PART**. It is **granted** as to Defendants Straub, Caron, Larson, and Salmi, and partially granted as to Defendant Alexander. It is **partially denied** as to Defendant Alexander.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (docket no. 3) and Motions for Contempt (docket nos. 10 & 18) are **DISMISSED** as **moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Order to Testify (docket no. 19) is **DENIED**.

Dated: March 28, 2012        /s/ Gordon J. Quist
                             GORDON J. QUIST
                             UNITED STATES DISTRICT JUDGE